Henry T. McCormick, Appellant, v. L. B. Kinsey and D. H. Cramer, Supervisors of East Wheatfield Township, and C. A. Campbell.

*Equity—Easement—Surface drainage—Public officers—Discretion of supervisors.*

A court of equity will not interfere by injunction with the discretion of road supervisors in the betterment of the drainage of a public road although they may have partially changed the courses of surface water, without increasing the volume, which would have found its way, ultimately, and in any event, on to the land of plaintiff, which land was naturally servient to all the water of that particular watershed.

Argued May 15, 1899. Appeal, No. 109, April T., 1899, by plaintiff, from decree of C. P. Indiana Co., March T., 1898, No. 1, dismissing bill in equity. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Hearing on bill, answer and proofs. Before WHITE, P. J.

It appears from the record that plaintiff brought a bill in equity to restrain the defendants from draining the water from the public road, alleging that thereby an additional servitude of surface water was imposed on plaintiff's land. The court below immediately after the hearing delivered an oral opinion containing findings of fact and conclusions of law; after the appeal taken the judge reduced his opinion to writing and certified it with the record to the Superior Court.

The following findings of fact and conclusions of law were made by the court:

[We fail to find that it is made from rivulets of running water through the surrounding ground.] [10]

[This water going through the culvert, naturally runs or

distributes itself on to McCormick's land. This for years has been the natural watercourse for the water from the gutters along the south side of the road.] [11]

[We find further that by authority of Supervisor Cramer in 1896, after the wet time in August, that year, some of the water by ditch was turned from the gutter on the south side of the road into this pond or swamp on Campbell's land so as to avoid, if possible, the filling of the gutter with sand or sediment and forcing thereby the surface water on to the road.] [12]

[The weight of the evidence satisfies us the turning of the water from the gutter into this Campbell pond or swamp was with the intention of decreasing the filling up of the gutter with sand or dirt by breaking the flow of the surface water along the gutter.] [13]

[We find . . . . that the turning of water from the gutter into this Campbell pond does not increase the volume of water going into and through the culvert, thence on to the plaintiff's land.] [14]

[We may say, further, we find the turning of the water from the gutter into the Campbell pond or swamp and letting it come from that pond to the road and the culvert does not increase the volume of water that goes through the culvert on to plaintiff's land.] [15] . . . .

[And we further find that the act of Campbell, the other defendant, did not increase the flow of water on to the plaintiff's land by anything he did. [16] . . . .

[The plaintiff's bill avers, " the conduct of the supervisors was arbitrary, oppressive and prejudicial to plaintiff's rights and not a bona fide exercise of their official powers, but a use of their office for an unlawful purpose." We find the evidence does not sustain this averment.] [17]

[The court refused to find that the plaintiff's land was damaged by the increased amount of water let down upon it by the defendants.] [18]

[We find here the act complained of by the plaintiff . . . . was by the direction of the supervisors in the exercise of their judgment in the management of the public road and the running of such water out of and over that pond into this culvert and on to plaintiff's land would not make any of the defendants responsible in this proceeding.] [19]

The court dismissed plaintiff's bill which prayed for an order restraining the supervisors from maintaining a drain which relieved the drainage along the gutters of the public road by diverting it on to land of one Campbell and thence through a culvert on to plaintiff's land, and for compensation in damages. Plaintiff appealed.

*Errors assigned* among others were (10–19) to findings of fact and conclusions of law by the court below, reciting same. Errors were also assigned to the conclusions of the court in not finding certain facts as requested by plaintiff.

*E. Y. Breck* and *D. B. Taylor*, of *Jack & Taylor*, for appellant.—It was held in Kauffman v. Griesemer, 26 Pa. 407, that if the owner of the superior estate causes a greater amount of water to pass on to the inferior estate than the natural condition of the premises would occasion, the owner of the latter may lawfully erect on his own estate a countervailing impediment to such excess: Martin v. Riddle, 26 Pa. 415; Miller v. Laubach, 47 Pa. 154; Bentz v. Armstrong, 8 W. & S. 40; Hays v. Hinkleman, 68 Pa. 324.

The courts have equity jurisdiction over municipal corporations when abusing their privileges and will, in a proper case, interfere by injunction: Hill v. Kensington, 1 Pars. 501.

*Sam'l Cunningham*, of *Cunningham & Fisher*, and *J. N. Banks*, with them *W. L. Stewart*, for appellees.—Even if the township supervisors were mistaken in their judgment as to the best mode of disposing of the surface water, and caused more water to flow on to McCormick's land by turning the water from the road into the pond, still the appellant could not maintain his suit: Shieb v. Collier Twp., 11 Atl. Rep. 366.

It has been repeatedly held that a municipal corporation is not liable in damages for an injury which is the result of an honest mistake of judgment made by a public officer in the fair discharge of his duty. It is sufficient to refer to Carr v. The Northern Liberties, 35 Pa. 324, and Collins v. Philadelphia, 93 Pa. 272. This question ought not to be open to further discussion.

To the same effect is Fair v. Philadelphia, 88 Pa. 309, where it is held that "a municipality is not liable for damages for a

lawful exercise of its discretionary powers nor for mistakes
which may be committed by its officers in the honest, fair exer-
cise of their duties."

OPINION BY BEAVER, J., July 28, 1899:

The first assignment of error is as to the failure of the court
to find the facts.   Subsequently to the preparation of the plain-
tiff's paper-book, the president judge of the court below made
a formal finding of the facts and conclusions of law based thereon
which were filed May 1, 1899.   Inasmuch as these findings
and conclusions are presented for our consideration in the sup-
plemental paper-book of the appellant and assignments of error
based thereon are submitted with an argument relating thereto,
we take it for granted that this assignment is practically with-
drawn.   The case seems to have been decided at the hearing
and an oral finding of facts and conclusions of law and a decree
based thereon announced.   Whether taken down by the stenog-
rapher at the time or not does not affirmatively appear, but they
were not filed and, as explanatory thereof, the trial judge says :
" We were misled, because of a remark of one of the counsel
for the plaintiff to us the same day after the hearing, that if
there was an admonitory suggestion in the decree to the super-
visors about care and caution in endeavoring to preserve the
north bank of the so-called pond, that he thought all would be
satisfactory.   We were of impression the commissioner had
written out and filed the decree."

All the assignments of error contained in the plaintiff's origi-
nal paper-book, except the formal ones, relate to the facts which
the court failed to find.   All contained in the supplemental
paper-book relate to the facts which the court found.   We have
very carefully read the testimony and fail to see how the court
could by any possibility have found the facts differently.   So
overwhelming was the testimony on the part of the defendant
that, after hearing seventeen witnesses, the court declined to
hear eleven others who were there ready to testify, as was an-
nounced by defendant's counsel, to the same state of facts.

Plaintiff's farm was at the lowest point of a watershed which
emptied itself from all points through a culvert in the public
road, formerly the Philadelphia and Pittsburg turnpike, over
his farm, into the waters of Black Lick creek.   Nature had

provided no other outlet. The oldest inhabitants, who had been familiar with the conditions which prevailed for half a century, testified that the waters had always so emptied themselves and could be emptied in no other way; that the water from the so-called pond upon the land of Campbell, who was joined with the supervisors as defendant, had always flowed over its slight embankment into the road and so through the culvert upon the plaintiff's farm and through it to the creek. Whether the pond or swamp of the defendant, Campbell, was, therefore, made by surface water or wet weather springs, as alleged by the plaintiff, made but little difference. The overflow of it in wet weather must necessarily run over the plaintiff's land, unless, as expressed by a number of the witnesses, it could be made to run uphill. The condition of which the plaintiff complained, although existing only in wet weather, was not new. Although, in consequence of the act of the supervisors in diverting the water from the roadway, by way of the defendant's, Campbell's, premises, the water flowing from the pond may have been increased, it decreased it on the road and could not, in the nature of things, have sent more water through the culvert and so on to the plaintiff's land than if the water had not been so diverted. Indeed the filling of the plaintiff's drains with sand and the wash of the water must necessarily have been lessened by the act of the supervisors, for the reason that the sand was carried into Campbell's pond and the water therein would be diminished by evaporation, so that there would be less to flow through his land than if it had flowed down the road directly into the culvert.

The court found that the acts of the supervisors were done in the exercise of their judgment; that the road, under their direction, was thereby greatly benefited and the expense to the township lessened and the plaintiff in no way injured. In this, after a careful examination of the testimony of the disinterested witnesses, we entirely concur. There was no ground, therefore, for restraining the supervisors or Campbell, the other defendant, and the bill was very properly dismissed.

Decree affirmed and appeal dismissed at the costs of the appellant.