# Taylor *v.* Canton Township, Appellant.

*Practice, C. P.—Statement of claim—Amendment.*

An amendment of a statement of claim, which is simply a restatement of the grounds upon which the plaintiff seeks to recover, is permissible.

*Damages—Flood—Waters.*

In an action to recover damages to crops caused by a flood, the testimony should be confined to the amount of damage sustained at the time of the injury. It is error to prove the value of the crops when harvested.

In an action against a township to recover damages for injuries to crops injured by a flood alleged to be due to a change in a highway, the township is liable only if there was actual negligence in the doing of what the road commissioners, in the exercise of their judgment, determine to be best.

*Evidence—Irrelevant testimony.*

Because a portion of the testimony of a witness has been admitted, is no reason why the witness should be allowed to continue to testify, after objection, to what is irrelevant to the issue.

*Waters—Flowage—Easement—Dominant and servient tenements.*

Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in, or flow or fall upon, the superior. The discharge of such water is to be made in a manner in which nature has provided. If a new course is made, different from that which nature has provided, and the discharge is thereby made to fall, upon a

different place, and in a different manner, so as to cause damage to the owner of the servient tenement, the owner of the superior or dominant tenement will be liable.

Road commissioners may for the protection of a roadbed collect waters which would naturally flow upon lower land, and direct their flow by their own force and volume upon the lower tenement in such a way as to preserve the road, if they do not thereby change their course to the injury of the owner of the lower tenement.

*Waters—Negligence—Concurrent negligence—Act of God.*

Where an injury is occasioned by flood or storm, the concurrence of negligence with the act of God in producing the injury is necessary to fix liability. If the act is so overwhelming as of its own force to produce the injury independently of the negligence shown, the defendant owner cannot be made responsible.

A landowner cannot stand idly by and see his property destroyed by water, if by an effort on his part the injury may be avoided.

Where public officers in the discharge of a public duty, act according to their best judgment, the evidence of negligence or wrongdoing ought to be clear which would involve the municipality for which they act, in damages.

Argued Nov. 21, 1905. Appeal, No. 89, Oct. T., 1905, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1902, No. 565, on verdict for plaintiff in case of Lelia E. Taylor v. Canton Township. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass to recover damages for injuries to land. Before FANNING, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $400. Defendant appealed.

*Errors assigned* were (1–27) various rulings on evidence and instructions sufficiently set forth in the opinion of the Superior Court.

*T. S. Hickok*, with him *W. C. Sechrist* and *Lilley, Wilson & Lilley*, for appellant.—The holding of municipal corporations liable for damages for acts of its servants is unreasonable. It exists only in cases of maintaining roads and certain analogous duties, and these rest on precedent instead of reason: Ford v. School District, 121 Pa. 543.

For an unauthorized, willful and wanton or malicious trespass

committed by an agent or servant, the principal or master is not liable. Neither is a master or principal liable for the acts of a servant or agent committed outside the scope of his employment: Pennsylvania Co. v. Toomey, 91 Pa. 256; Pittsburg, etc., R. R. Co. v. Donahue, 70 Pa. 119; Elliott v. Philadelphia, 75 Pa. 347; Royse v. May, 93 Pa. 454; Ford v. School District, 121 Pa. 543; Root v. O'Neil, 24 Pa. 326; Machinery Co. v. Old Lycoming Twp., 25 Pa. Superior Ct. 156.

That the lawful measure of damages was the value of the crop at the time the damage occurred to it is undoubted: Irwin v. Nolde, 176 Pa. 594.

The defendant had a right to clean out the bed of the stream to direct the flow of the water: Meixell v. Morgan, 149 Pa. 415.

It is settled law that in agricultural and mining operations ditches may be dug to direct the flow of the water, but of course not to divert it: Kauffman v. Griesemer, 26 Pa. 407; Rhoads v. Davidheiser, 133 Pa. 226; Miller v. Laubach, 47 Pa. 154; Glass v. Fritz, 148 Pa. 324; Meixell v. Morgan, 149 Pa. 415; Coal Co. v. Sanderson, 113 Pa. 126; Martin v. Riddle, 26 Pa. 415; Huddleston v. West Bellevue Borough, 111 Pa. 110.

There may be some negligence of a defendant and some injury as the result of it, and still he may not be liable. He is not if the flood or storm is extraordinary and of such severity as of itself to have produced the damage, negligence or no negligence: Baltimore & Ohio R. R. Co. v. School Dist., 96 Pa. 65; Helbling v. Cemetery Co., 201 Pa. 171.

*J. W. Stone,* of *Stone & Brooks,* and *Rodney A. Mercur,* for appellee.—Under all the authorities where the cause of action is the particular matter for which the suit is brought, and when the object of an amendment is not to forsake this but to adhere to it, and affect a recovery upon it it is the duty of the court when the merits of the case cannot be otherwise reached to permit the amendment: Erie City Iron Works v. Barber, 118 Pa. 6; Thompson v. Chambers, 13 Pa. Superior Ct. 213; Jackson v. Gunton, 26 Pa. Superior Ct. 203; Adam v. Moll, 6 Pa. Superior Ct. 380; Stoner v. Erisman, 206 Pa. 600.

The argument of the appellant is based upon the express

ground that municipalities have far greater rights than individuals in diverting waters and that they have the right to do as they believe in their judgment is the best thing to be done, whether it inflicts injuries upon private land owners or not. Such we contend is not the law of this state, and never was, as the following authorities show : Huddleston v. West Bellevue Boro., 111 Pa. 110; Elliott v. Oil City, 129 Pa. 570 ; Torrey v. Scranton, 133 Pa. 173; Rohrer v. Harrisburg, 20 Pa. Superior Ct. 543 ; Toole v. Del., Lack. & West. R. R. Co., 27 Pa. Superior Ct. 577 ; Weir v. Plymouth, 148 Pa. 566 ; Bohan v: Avoca Boro., 154 Pa. 404 ; Goulden v. Scranton, 3 Lancaster Law Rev. 340 ; Gould on Waters, sec. 272 ; 2 Dillon on Munic. Corp. sec. 1042; West Orange v. Field, 37 N. J. Eq. 600; Byrnes v. City of Cohoes, 67 N. Y. 204; Noonan v. City of Albany, 79. N. Y. 470; Brown v. Ry. Co., 183 Pa. 38; Casebeer v. Mowry, 55 Pa. 419 ; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 Rawle, 9 ; Bacon v. Arthur, 4 Watts, 437 ; Bell v. McClintock, 9 Watts, 119 ; Forster v. Juniata Bridge Co., 16 Pa. 393 ; Dugan v. Bridge Co., 27 Pa. 303 ; Livezey v. Phila., 64 Pa. 106 ; Knoll v. Light, 76 Pa. 268 ; Helbling v. Cemetery Co., 201 Pa. 171 ; Humphrey v. Irvin, 18 W. N. C. 449.

OPINION BY BEAVER, J., March 12, 1906 :

The Towanda Creek, a stream of considerable size, subject to sudden freshets, runs eastwardly through the township of Canton. Parallel to it, and on lower ground, runs for some distance what is known as Spring Brook, which rises a little west of the locus in quo in the present case and runs eastwardly for a considerable distance, and then in a northeasterly direction, emptying into the stream first mentioned. The slope of the ground between these two streams is naturally, therefore, in a northeasterly direction. The Grover road, one of the principal roads of the township, lies between them. The premises, for the injury to which the plaintiff claims damages in this suit, is north of, and lower than, the said road.

At some time in the past—just when does not clearly appear, and it is not material—the Towanda Creek made a new channel for itself, flowing in a more northerly direction than the original one, and then, making a quick turn to the east, returned to its main and original channel. At this abrupt turn which was

likely to overflow in times of high water, a dyking or riprap, said to be between thirty and forty rods from the Grover road, had been erected a number of years ago by the joint efforts of the road commissioners and the owners of the land. In 1901 an extraordinary freshet greatly increased the volume of the water flowing through the creek, which not only increased its height, but ate around this dyking or riprap, which was of timber, washed it out to a large extent and carried it down the stream. The result was that the stream overflowed its banks, flowed across the valley, washed out the Grover road, carrying much of its surface away, and exposed the terra cotta pipes which had been used to carry the overflow water across the road, so that the heavy travel along the road crushed them and they were no longer useful for the purposes for which they had been originally laid.

It seems to be admitted that the road commissioners, who have charge of the roads of the township, had before this time endeavored to carry the overplus of water, particularly from the upper side of the road, as far as possible, in an open drain alongside the road for a considerable distance, until it emptied into Spring Brook above mentioned, prior to its junction with the Towanda Creek.

In reconstructing the road after the freshet, it became necessary to remove the terra cotta pipes referred to. The road commissioners, in determining what was best to be done, concluded that it was not advisable to replace the dyking upon private property, although they had the permission of the owner to do so, and indeed his offer to render assistance in restoring it, and instead of doing so determined to raise the road sufficiently to withstand any pressure of water which might come from the creek, place a bridge across it instead of the terra cotta pipes and thus provide for any surplus of water which during freshets might come from the direction of the creek. They accordingly enlarged the opening in the road, built abutments and laid a bridge, the natural tendency of which and the natural result of which later was to throw more water upon the premises of the plaintiff than had hitherto flowed there. This expected result, arising from the removal of the dyking, rendered it expedient, in order to avoid a repetition of the washing out of the road, to change the side drains, and allow the

water coming down from the creek to take the course which, in the judgment of the commissioners, was indicated by the natural conformation of the ground.

It would seem from the verbal testimony, and also from the draft which was in evidence, that there was no regular stream or water course running from Towanda Creek toward Spring Brook, the outlet covered by the bridge in the road being intended and provided only for giving vent to the water which might flow from the creek toward the brook in times of extraordinary flood conditions.

In July, 1902, during a freshet, the Towanda Creek overflowed its banks, and the water which came therefrom was given vent, through the culvert or passage covered by the bridge intended therefor, and thrown upon the property of the plaintiff, destroying a portion of her crops and injuring, as was alleged, her buildings.

Alleging negligence on the part of the defendant township by the action of its road commissioners in building the culvert or bridge in question, by which more water was thrown upon her premises than had been previously cast upon them through the pipes which had theretofore existed, she brought her action of trespass.

1. The first assignment of error relates to the amendment to the statement of claim allowed upon a proper application. In reference to this, it is probably unnecessary to say more than that, by the amendment, the form of action was not changed, nor did the cause of action materially differ. It was simply a restatement of the grounds upon which the plaintiff sought to recover. This, under all our authorities, is permissible : Stoner v. Erisman, 206 Pa. 600; Thompson v. Chambers, 13 Pa. Superior Ct. 213; Jackson v. Gunton, 26 Pa. Superior Ct. 203.

2. If the plaintiff had made an offer to prove the value of the crops when harvested, either as to the measure of damages sustained or as a means of determining the amount of damages, it would have been clearly incompetent and irrelevant. The flood occurred in July when the tobacco was in the green. What its value would have been when harvested, therefore, could not in any way help the jury to determine what the value of it was at the date of its destruction. The testimony was no more relevant after it was in than would have been the offer,

which should have been rejected. In view of the fact, however, that the plaintiff's husband subsequently testified that the damages instead of being $150, based upon a harvested crop, were $50.00, as the crop at the time of its destruction was, we see no special injury to the defendant by the refusal to strike out the testimony. If this stood alone, we would probably not reverse, but inasmuch as the case goes back for trial, the testimony should be confined to the amount of damage sustained at the time of the injury.

3. In view of the admission that, "It is not contended by the appellee that the defendant township could have been legally compelled to go outside of the highway and riprap or dyke the banks of Towanda Creek for the purpose of preventing the overflow of waters from flowing into and down the highway," it is not clear to us that any testimony in regard to their not doing so or the reasons for their failing to do so was in any way relevant to the issue. The mode of repairing the highway was a question for the commissioners. Having exercised their judgment in doing so, we cannot see that the plaintiff could call them to account in this action and recover damages against the township, unless more water was cast upon the plaintiff's land than would naturally flow upon it or there was actual negligence in the doing of what the commissioners, in the exercise of their judgment, determined to be best. Much of the testimony, however, of which complaint is now made, was received without objection on the part of the defendant. If objection had been made at the beginning instead of near the close of the testimony, the admission of which is now assigned for error, the court could have much more intelligently disposed of the entire question. Because a portion of the testimony had been admitted, however, is no reason why the witness should be allowed to continue to testify, after objection, to what is irrelevant to the issue. We think the objections to the testimony of Brown, as to what negotiations he had with the commissioners as to the repair of the dyking and what he did in reference thereto, were not relevant and should have been excluded.

4. As to the fifth and sixth assignments, we can see no error either in admitting the testimony of the witness Williams, as complained of in the fifth assignment, or the comments of the court upon it, and that of other witnesses corroborating him,

as assigned for error in the sixth assignment. The latter is faulty in not referring to the pages from which the excerpts of the charge complained of are taken, although both relate to the same subject.

5. We are not clear that the testimony complained of in the seventh assignment of error did not have some bearing upon the question as to when and how the burden of carrying the water from the roadway was first cast upon the plaintiff. If that were the object of it, it was doubtless relevant. Of course, if the object was to make it in any sense the basis of a claim for damages, it was entirely irrelevant and the court evidently recognized that and admitted it, not for the purpose of showing damages but explaining the manner in which the plaintiff's land was first, or at least previously to the acts complained of, made to bear the burden of the waste water from the roadway. In this view of it, we think it was admissible and the remarks complained of in the eighth assignment, taken in their proper connection and viewed as a whole, did the defendant no harm.

6. The testimony of Leahy, complained of in the ninth assignment, should not have been admitted. It was not competent for him to testify as to the motives or the reasons which influenced the road commissioners in refusing to restore the dyking at Towanda Creek. When the testimony, however, assumed practical significance, the court in effect sustained the objection by saying "That is a legal question," and the examination of the witness was suspended. We think the testimony did the defendant no harm.

7. This brings us to the consideration of the general principles involved in the charge and in the answers to points which constitute the basis of very numerous assignments of error. We can probably simplify the case somewhat by the statement of some simple well known principles which, in their application to the facts of this case, must in effect govern it.

(*a*) As was said by Mr. Justice WOODWARD, in Kauffman v. Griesemer, 26 Pa. 407: "Almost the whole law of water courses is founded on the maxim of the common law, aqua currit et debet currere (water flows and ought to flow). Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior

tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior." It may be added that the discharge of such water is to be made in the manner in which nature has provided. If a new course is made, different from that which nature has provided, and the discharge is thereby made to fall upon a different place and in a different manner, so as to cause damage to the owner of the servient tenement, the owner of the superior or dominant tenement would be liable. As to the right to discharge the water coming from the dominant tenement upon the servient tenement, see also Rhoads v. Davidheiser, 133 Pa. 226; Meixell v. Morgan, 149 Pa. 415.

(*b*) It is practically admitted by the plaintiff. that no obligation rested upon the commissioners to restore the dyking. If, therefore, there was an increase in the flow of water which overran the banks of the creek in time of freshets, they were bound to take care of it, when it reached the road. How were they to do so ?

(*c*) If there was a natural depression from Towanda Creek to Spring Brook, no matter whether a water course, technically so called or not, and no road had been there, the plaintiff would, of course, have been bound to take care of the water flowing from the lands south of or above hers to Spring Brook.

(*d*) The obligation to do so was not changed by the throwing up of the road above her premises. It was the duty of the supervisors to build the road in such a way as to resist the floods coming down from Towanda Creek and, if the natural flow of the water indicated the point at which they built the bridge, as one at which the surplus water should be allowed to flow across the road, they were justified in building the bridge in such a way as to vent the water which came down from Towanda Creek and cast it upon the plaintiff's land, if the natural conformation of the ground so indicated.

(*e*) It was not a question as to whether more water was so cast upon the land than previous to the erection of the bridge. Confessedly there was more water. The increase, however, was occasioned not by the act of the commissioners in erecting the bridge but (1) by the removal by flood of the dyking which allowed more water to overflow the banks of the creek than previously, for which the township was not responsible ; and (2)

the extraordinary rise in the water in the creek which was occasioned by natural causes which, in the very nature of the case, were not and could not be controlled by the commissioners. This increase of water the road commissioners were bound to take care of. They could do this only by making the road so high that it would not be washed away, and yet not high enough to dam the water back upon the adjacent landowners. To prevent this it was necessary to provide an outlet. In providing such an outlet, however, the accumulation of water must be made to flow in its natural course, and if in following such a natural course it flowed upon the lands of the plaintiff she was bound to bear the burden and was not entitled to any damages therefor; hence there were two serious questions for the jury: 1. Was the character of the ground such that the water, whatever its volume, would naturally flow from Towanda Creek to Spring Brook over and through the land of the plaintiff? 2. Was it cast upon her land in the way in which it would have been naturally cast in case no road and no bridge had existed? These questions, and particularly the first, were left to the jury, but in the charge and in the answers to numerous points of the defendant there were a number of very significant qualifications and omissions which we will now consider.

8. In the charge: "If you find that the defendant has not changed or thrown water upon her land that did not formerly run there, or find that the defendant did not increase the flow of water upon her premises, or that the damage was occasioned solely by an extraordinary storm which human foresight could not guard against or foresee, then you would simply say, 'we find for the defendant;'" and, in the answer to the defendant's fifth point: This point is affirmed with the qualification that the defendant would have been guilty of a negligent act by causing a greater flow of water on the plaintiff's land;" and again, in the charge, as complained of in the thirteenth assignment: "But as we have said to you, if the township has directed the flow of water upon Mrs. Taylor's land that did not originally flow there, or if they have increased the flow of water upon her premises, then there could be a recovery for such injuries as were the natural and proximate cause of such negligent act." Throughout the charge and in the answers to points the trial

judge seems to have had in mind the fact, that, if by the erection of the bridge and the outlet thereunder, more water was cast upon the plaintiff's land than had previously flowed there, the defendant was by. that fact alone made liable in damages, whereas, so far as appears from the testimony, the road commissioners had not increased in any way the flow of water upon the plaintiff's land. There was, of course, more water than previously but they were not directly responsible for the increase. It was not their act. It was the act of God, unless they diverted to and upon the plaintiff's land water which would have flowed elsewhere. No such qualification, however, was made. The negligence of the defendant was made to turn solely upon the question of an increased flow of water, regardless of whence it came or how it accumulated, or the motives which actuated the commissioners. In this we think there was serious error, arising from the missapplication of the general principles heretofore recounted which the court evidently had in mind in a general way.

9. The fourteenth,. fifteenth, sixteenth, seventeenth, eighteenth and nineteenth assignments of error relate to the refusal of the court to affirm certain points submitted by the defendant. The fourteenth assignment, covering the refusal of the court to affirm the defendant's twelfth point, is as follows: " Under the statement filed by the plaintiff in this case, it is not incumbent upon the defendant to establish by testimony the fact that the overflow from Towanda Creek reached the public highway at the point where the bridge is located, and if the jury believe from the evidence that, if there had been no bridge or public highway at the point where the bridge is located the water complained of would have flowed over the land of the plaintiff as it did, the plaintiff cannot recover. *Answer :* Refused without reading." The plaintiff's statement alleged that the overflow from Towanda Creek, after the washing out of the embankment or dyking, " would naturally have flowed in and upon said public road aforesaid. " There was also evidence that there was a natural depression, or dip or sag as the court calls it, in that direction. If, therefore, the jury believed from the evidence that, if there had been no bridge or public highway at the point where the bridge is located, the water complained of would have flowed over the land of the plaintiff,

as it did, she clearly could not recover.    The point should have been affirmed.

So the fifteenth, sixteenth, seventeenth, eighteenth and nineteenth assignments of error, all of which relate to the refusal to answer certain points raising similar questions in regard to the natural flow of the water coming from Towanda Creek to Spring Brook over the plaintiff's land, should have been affirmed, with possible exception of that part of the defendant's ninth point in the eighteenth assignment which relates to the accumulation and somewhat increased quantity of water, which seems to us to be too broad, in that it did not confine the increase to what naturally flowed from Towanda Creek, seeking its outlet on plaintiff's land.

10. The converse of this proposition was set forth in various points of the plaintiff, which were affirmed and which are complained of in the twenty-first, twenty-second, twenty-third and twenty-fourth assignments of error.    The plaintiff's first point and the answer thereto, complained of in the twenty-first assignment, are as follows: "If the jury find from all the evidence in the case that the defendant has caused the surface waters of the highway to be accumulated, by artificial embankments across the highway and the gutters, in such a manner as to force said waters in a largely increased flow over the plaintiff's premises, thereby occasioning injury to the plaintiff's land, the defendant is liable for all damages caused by such negligent act and the plaintiff is entitled to recover."  This point was affirmed without qualification.    It is faulty in several respects. It assumes. negligence.    With what period is the largely increased flow mentioned therein to be compared?    Does it relate to waters that would not have naturally flowed over the lands of the plaintiff?    If not, the road commissioners had a right to collect such waters and have them flow by their own force and volume upon the lower tenement in such a way as to preserve the roadbed, if they did not thereby change their course to the injury of the plaintiff: McCormick v. Kinsey et al., 10 Pa. Superior Ct. 607.

So as to the second point of the plaintiff which was affirmed without qualification: "If the jury find from the evidence that the defendant township had knowledge that a neighboring turbulent stream, in times of high water, frequently overflowed its

banks and discharged its waters upon the highway in the immediate vicinity of plaintiff's lands, have by means of artificial embankments and excavations caused said waters to be forced and driven across said highway for the purpose of keeping said waters out of said highway, and thereby discharging them upon the plaintiff's lands, the defendant is liable for all damages caused thereby, and your verdict should be for the plaintiff." This point should at least have been qualified.  It was the duty of the commissioners to protect their road from the overflow referred to and if, in doing so, they cast no more water, nor in a different way, upon the plaintiff's land, than would have flowed there naturally from the overflow of the Towanda Creek, the township would not be liable.

The plaintiff's fourth point, assigned for error in the twenty-fourth assignment, is as follows: "If the jury find from the evidence that the defendant township, in its discretion, have for past years maintained an embankment or dyking on the banks of Towanda Creek for the purpose of preventing the overflow waters there from flowing into the highway and damaging the same, and that subsequently said dyking has been abandoned by said defendant and, in lieu thereof, defendant had excavated and erected an embankment across said highway and its gutters, for the purpose of protecting said highway, and discharging the overflow waters which would flow from said creek upon the plaintiff's lands, thereby causing injury, the defendant is guilty of negligence and is liable for all damages committed to plaintiff's lands by reason thereof."  This was affirmed without qualification.  It is difficult to determine from the manner in which the point is affirmed what was the negligence complained of.  Was it the failure to restore the dyking at Towanda Creek?  The plaintiff has admitted elsewhere that there was no negligence in this and that the township was not bound to maintain the dyking. Was the negligence in "discharging the overflow waters which would flow from said creek upon the plaintiff's land?"  This would be no more negligence in itself than the refusal to maintain the dyking, if by that expression is meant the waters which would naturally flow from the creek over the plaintiff's land. Was it by reason of the manner in which the increased flow of water was discharged?  If so, that should have been distinctly stated.  The point is faulty and should have been refused.

11. The defendant was entitled to a simple or properly quali-
fied affirmation of its eleventh point, the answer to which is com-
plained of in the twenty-fifth assignment: "If the jury find from
the evidence that the flood of July 24, 1902, was an extraordinary
flood, of such severity in itself as to have produced the damage
complained of by the plaintiff, then the defendant is not respon-
sible to the plaintiff therefor." The point is predicated upon
the character of the flood being "in itself" the cause of the dam-
age. It eliminated by its very terms all other causes. It was
hardly fair, therefore, to have brought into the answer, by way
of qualification, the question of concurrent negligence. The
answer was not responsive to the point. If, however, the quali-
fication was necessary, it was of such importance that the at-
tention of the jury should have been specifically called to what,
under the circumstances, would constitute concurrent neg-
ligence. This question is one of great delicacy and requires
most discriminating care in submitting it to a jury.

In B. & O. R. R. Co. v. School District, 96 Pa. 65, Mr.
Justice Green said, in considering a similar question: "We
are also of opinion that the court erred in their answers to the
plaintiff's second and third points. In affirming the first
point the court ruled that, 'If there was negligence on the
part of the defendant concurring with the act of God at the
time plaintiff's loss was sustained, then the defendant is liable,
and the jury are not bound to inquire whether the loss would
have happened if the defendant had not been guilty of negli-
gence.' As we understand this point, it practically declares
that, although the act of God alone, without any negligence of
the defendant, would have caused the injury, the jury were
not at liberty to consider that fact if in reality there was negli-
gence on the part of the defendant concurring with the act of
God. In other words, no matter how terrible, extraordinary
and unprecedented were the storm and flood, so that they alone
caused the injury, yet if there was concurring negligence of
the defendant, although it did not produce the injury, and its
absence would not have prevented it, still the defendant
would be liable. The same idea is repeated in the plaintiff's
second point, that if the defendant's negligence in any degree
caused the loss, they would be liable. Now a small pebble in
one of the culverts would, in some small degree, impede the

course of the water, and yet the doctrine of this point, which the court affirmed, would make the defendant liable for the entire injury even though a huge avalanche of water were suddenly launched upon the stream and hurled with irresistible force upon the embankment and culvert in question. Such is not the law. This is the very highest possible degree of care, greater even than is required of railroad companies in the carriage of passengers. The correct doctrine on this subject was expressed in the case of the P., F. W. & C. Ry. Co. v. Gilleland, 56 Pa. 445, to wit: " A railroad company in constructing its road and works is bound to bring to their execution the engineering knowledge and skill ordinarily known and practised in such works. There is no liability on the part of a railroad company for not constructing a culvert so as to pass extraordinary floods." The doctrine here enunciated would apply with even more force to the acts of public servants who act upon their best judgment in the construction of the highways of a township.

To the same effect is Helbling v. Cemetery Co., 201 Pa. 171, in which it is decided: " Where an injury is occasioned by flood or storm, the concurrence of negligence with the act of God in producing the injury is necessary to fix liability. If the act is so overwhelming as of its own force to produce the injury independently of the negligence shown, the defendant owner cannot be made responsible." See also Berninger v. S. H. & W. Ry. Co., 203 Pa. 516.

12. The twenty-seventh assignment of error relates to the answer of the court to the defendant's fifteenth point, which was: " If the plaintiff could have made a ditch from the bridge in question over her land to Spring Brook, by reasonable expense and led the water away from her buildings, as testified to by defendant's witnesses, she cannot, at any rate, recover for any damages she might have prevented by taking such precautions." The court answered: " This point, as drawn, we refuse, but we say to you that, if the evidence discloses any negligence on the part of the plaintiff that contributed to the injury, there can be no recovery," and then proceeds with instructions as to what contributory negligence is. There was no allegation on the part of the defendent of any contributory negligence on the part of the plaintiff, as that term is usually understood.

There does not seem to be in the evidence anywhere anything which would support such a contention. Nor was the court asked to say that there could be no recovery. The point as drawn contains a correct general principle. As was said by Mr. Justice SHARSWOOD, in Chamberlin v. Morgan, 68 Pa. 168: " Undoubtedly it is incumbent in every case upon an injured party to do whatever he reasonably can to lessen the injury ; " and, in Mellick v. Penna. R. R. Co., 203 Pa. 457, the present Chief Justice said : " The general rule for the measure of damages in cases of private injury by a public nuisance is the cost of abating it, if that is less than the amount of the damages suffered." The plaintiff could not stand idly by and see her property destroyed, if by an effort on her part the injury could be avoided ; but whether or not this was a case for the application of this general principle was a question for the jury, under proper instructions. It may be seriously doubted whether she was bound to make a ditch before the rains descended and the floods came, and when the flood was on whether she could accomplish anything in the way of an attempt to divert it from the house would be a question for the jury. The defendant was entitled to an answer to the point, with qualifications such as are indicated.

13. There is no malice on the part of the road commissioners alleged or attempted to be shown in this case. They apparently acted according to their best judgment, in the discharge of a public duty. Having been warned by the practical destruction of the road by the freshet of 1901, they attempted to provide against similar disaster in the future. In doing so, did they act intelligently ? Did they fail to exercise the care which was required at their hands, according to the circumstances ? Did they assemble or gather together more water than would have naturally flowed over the plaintiff's property, if the road had not been there ? And if not, or if in doing so, did they seek out a channel, which was not indicated by the actual conformation of the ground, to the plaintiff's hurt ? We cannot say that there was no evidence to be submitted to the jury upon these questions, but where public officers, in the discharge of a public duty, act according to their best judgment, the evidence of negligence or wrong doing ought to be clear which would involve the municipality for which they act in damages. See

Krug v. St. Mary's Boro., 152 Pa. 30, and contra Sheib v. Collier Twp., 8 Sadler's Reports (Penna. Supreme Ct. Cases) 526. See also Gift v. City of Reading, 3 Pa. Superior Ct. 359.

We have considered this case at very considerable length for the reason that it was difficult to dispose of it without considering the assignments of error separately. For the reasons stated in disposing of these several assignments, the case must go back for a retrial.

Judgment reversed and a new venire awarded.