# Rocap v. Bell Telephone Company, Appellant.

*Negligence—Telephone company—Res ipsa loquitur—Act of God—Lightning.*

1. In an action against a telephone company to recover damages for personal injuries sustained by plaintiff from an electric current while he was using a telephone, it is error to submit the case to the jury where the only inference that can be drawn from plaintiff's own testimony is that the shock received by the plaintiff if communicated by the telephone was produced by atmospheric electricity, and not by an electric current within the control of man.

2. Where a person in using a telephone during a violent thunderstorm is shocked and injured by an electric current, and there is nothing to show any negligence upon the part of the company, the rule res ipsa loquitur cannot be applied.

3. Where it appears by the plaintiff's own testimony that he was shocked by using the telephone during a violent thunderstorm and the uncontradicted evidence shows that the best known device in general use for protecting persons against injury by abnormal or atmospherical electricity had been placed on the telephone in question, the court should give binding instructions for defendant.

4. In such a case the failure of the telephone company to place a warning on the telephone against its use during electrical storms is not evidence to submit to the jury of the defendant's negligence in the management and operation of the telephone, where there is no evidence that such a warning was ever placed by the defendant company or any other telephone company on telephone instruments.

Argued Jan. 4, 1911. Appeal, No. 139, Jan. T., 1910, by defendant, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1906, No. 3,692, on verdict for plaintiff in case of William H. Rocap v. Bell Telephone Company of Philadelphia. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for $5,000, on which judgment was entered for $2,500, all above that sum having been remitted. Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment non obstante veredicto.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellant.—The rule res ipsa loquitur does not control the present case: Stearns v. Ontario Spinning Co., 184 Pa. 519; East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Spees v. Boggs, 198 Pa. 112; Baran v. Reading Iron Co., 202 Pa. 274; Johns v. Penna. R. R. Co., 226 Pa. 319; Cavanaugh v. Allegheny County Light Co., 226 Pa. 86; Stark v. Telephone Co., 225 Pa. 390.

Under the undisputed evidence the appellant performed its full duty relative to appliances on its telephones to guard against dangerous electrical currents.

*Francis Shunk Brown,* of *Simpson & Brown,* for appellee.—The maxim res ipsa loquitur clearly applies to this case: Barnowski v. Helson, 15 L. R. A. 33; Alexander v. Nanticoke Light Co., 209 Pa. 571; East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Whitehouse v. Rys. Co., 36 Pa. Superior Ct. 581; Delahunt v. United Tel. & Tel. Co., 215 Pa. 241; Sowers v. McManus, 214 Pa. 244; Brod v. St. Louis Transit Co., 115 Mo. App. 202 (91 S. W. Repr. 993); Olsen v. Ry. Co., 152 Mo. 426 (54 S. W. Repr. 470); Clark v. R. R. Co., 127 Mo. 197 (29 S. W. Repr. 1013); Poulsen v. R. R. Co., 18 N. Y. App. Div. 221 (7 Am. Elec. 675); Leonard v. R. R. Co., 57 N. Y. App. Div. 125 (7 Am. Elec. 683); Buckbee v. R. R. Co., 64 N. Y. App. Div. 360 (7 Am. Elec. 692).

Appellee made out a prima facie case, and the appellant failed to offer any evidence which shifted the burden of proof: Jackson v. Telephone Co., 88 Wis. 243.

Appellant's failure to place a warning on the telephone against its use during electrical storms tends to establish appellant's negligence: Kibele v. Phila., 105 Pa. 41.

OPINION BY MR. JUSTICE MESTREZAT, March 20, 1911:

The plaintiff is a newspaper reporter, and on the afternoon of June 21, 1906, went to the Philadelphia Country

Club to report a polo match and remained to dinner that evening. About half past eight o'clock he left the dining room and went to the telephone booth in the building to communicate with his paper. The telephone was installed at the clubhouse by the defendant company. As the plaintiff took the receiver from the hook and asked for the desired number, he received a shock and was severely injured. Alleging that his injuries were caused by the defendant's negligence, he brought this action to recover damages. The trial of the cause resulted in a verdict and judgment for the plaintiff. The defendant has appealed, and assigns for error the refusal of its motion for judgment non obstante veredicto.

It is averred in the statement, as the cause of action, that it was the duty of the defendant as the owner and operator of the telephone pay station at the Country Club to have the same properly equipped and protected so as to prevent injury to persons using it, and that "the defendant neglected to properly equip and operate its pay-station at the said Philadelphia Country Club, and so negligently maintained and operated the same, that on the twenty-first day of June, 1906, the plaintiff while using the telephone at the public pay-station above referred to, . . . . received a severe electrical shock rendering him unconscious," etc.

There were two witnesses called by the plaintiff, himself and Dr. Francis D. Patterson. In describing the accident the plaintiff testified that he went to the telephone booth, took the receiver off the hook and asked for his number, "and instantly there was a heavy shock. I saw a flash of electricity and bolt of fire in front of my face, and the next thing I remembered is the next afternoon my daughter sitting by my bedside in the Howard Hospital. . . . That was the first time I had regained my consciousness." As to the condition of the weather on the day of the accident, the witness says it looked threatening that afternoon and there was rumbling of thunder all the latter part of the afternoon, that he was

inside the clubhouse, "was not paying much attention to the surrounding elements," and did not know until the next day that a thunderstorm was going on at the time he went to the telephone.

Dr. Patterson testified that he was at the clubhouse that afternoon, and that it started to rain very hard early in the afternoon and there were distant flashes of lightning and thunder between half past five and six o'clock. He says that later he was sitting at dinner on a covered veranda when a heavy storm came up, "I judge it was about quarter after or twenty minutes after eight, suddenly there was a frightful, blinding flash of lightning— so much so that the people sitting at the same table with me all jumped up under the impression that the clubhouse had been struck, and just as we started to go indoors, somebody came running out and said a man had been struck by lightning, and I went in right away and found Mr. Rocap lying on the floor and I then examined him and found that his condition was apparently very serious. . . . He was exactly like a man who had suffered concussion of the brain. . . . He was lying some twenty or twenty-five feet from the telephone booth just where he had fallen. . . . There was a blinding flash of light and the people at the tables, everybody on this veranda, forty or fifty people, jumped up and thought the clubhouse was struck.  Q. And that was followed by a clap of thunder?  A. Followed instantly—there didn't seem to be an appreciable space between the light and the thunder.  Q. Were these such marks as would indicate that any of the current passed through him?  A. The one on the front of the forehead was undoubtedly a bruise where he fell.  What the one back of the ear was I am not prepared to state.  It might have been an electric burn. It was due to a suffusion of blood.  It might have come from a very severe bruise when he fell; I am not prepared to say that."

The testimony of the plaintiff, it will be observed, was confined to showing the accident, the condition of the

weather at the time he received his injuries, and, in rebuttal, that there was no sign on the telephone warning persons against using it during thunderstorms. The defendant company claimed that it had placed an instrument or device on the telephone at the clubhouse to prevent the discharge of electric currents during an electric storm into the telephone, and produced several witnesses having experience and technical knowledge who described the device and testified that it was a standard protection device and was at the time of the accident the best in general use and the most efficient known to the scientific world for protecting a telephone from outside or abnormal electrical disturbances, such as are due to lightning or to the telephone wire coming in contact with high voltage circuits. The witnesses, however, concurred in saying that there was no known device which would absolutely prevent lightning discharges into a telephone. It also appeared by uncontradicted evidence that the protection device on the telephone at the clubhouse was in proper working condition and had actually operated at the time of the accident.

The official records of the weather bureau at Philadelphia and the testimony of the observer in charge of the bureau show that there was a thunderstorm at Philadelphia during the evening of June 21, 1906, from 8:10 to 10:15 o'clock; and other testimony disclosed the fact that the storm was very severe and had put many telephones out of service.

This, like any other case, must be considered and decided on the facts admitted or proved in the trial court. We have referred to the material evidence produced by both parties. The credibility of the witnesses was not impugned and the evidence was entirely uncontroverted. The facts, therefore, are not in dispute. We are all of opinion that the learned trial judge erred in not giving binding instructions in favor of the defendant, and subsequently in not entering judgment for the defendant notwithstanding the verdict.

The basis of the plaintiff's. action is negligence, and, as disclosed by the statement, it consists in the failure of the defendant company to properly equip, operate, maintain and protect its pay station at the clubhouse resulting in the plaintiff's injuries. It was incumbent on the plaintiff on the trial of the cause to establish the negligence averred in the statement before he was entitled to recover. His counsel now contend in support of the judgment entered in his favor by the court below that the maxim res ipsa loquitur applies, that the plaintiff made out a prima facie, case and the defendant failed to offer any evidence which shifted the burden of proof, and that the defendant company's failure to place a warning on the telephone against its use during electrical storms was evidence tending to establish the company's negligence.

The maxim res ipsa loquitur does not apply to the facts of the case as disclosed by the. plaintiff's evidence. We are not required to determine whether the maxim would have applied had the plaintiff's evidence concluded by showing simply the accident, that he had approached the telephone, took the receiver and instantly received the electric shock which caused his injuries. It might be that as the telephone line and the electric current used in operating it were in the exclusive control and management of the defendant company and the result was so unusual and out of the ordinary in operating telephones that a fair inference might be drawn that the shock communicated to the plaintiff was caused by the defendant's negligent operation or management of its line. It possibly could have been inferred under these circumstances, though we do not decide, that the telephonic wire had come in contact with a highly charged wire by reason of the negligent construction or maintenance of the former wire and thereby produced the electrical discharge that shocked the plaintiff. The proof of the accident and the consequent injury without more might have made out a prima facie case and sent it to a jury. But the plaintiff went beyond the mere proof of the accident, and showed the cause

of it.  His evidence left no reasonable ground for an infer-
ence that the accident resulted from the defendant's neg-
ligence or improper operation or management of its line.
It pointed conclusively to one cause, if the telephone had
any connection with his injuries, and that was the act of
God.  The testimony of Dr. Patterson, the plaintiff's wit-
ness, leaves no rational doubt that the shock received by
the plaintiff, if communicated by the telephone, was pro-
duced by atmospheric electricity and not by an electric
current within the control of man.  Such being the only
reasonable inference to be drawn from the evidence, and
that, therefore, there was another cause than the defend-
ant's negligence which, at least, may have produced the
plaintiff's injuries, the rule res ipsa loquitur cannot be
applied: East End Oil Co. v. Pennsylvania Torpedo Co.,
190 Pa. 350; Allen v. Kingston Coal Co., 212 Pa. 54.

It appearing by the plaintiff's testimony that his in-
juries resulted from the act of God, the maxim has no ap-
plication, and a presumption of negligence does not arise.
Actus Dei nemini facit injuriam.  The burden was, there-
fore, on the plaintiff to produce affirmative proof of negli-
gence which concurred with the act and effectively con-
tributed to the accident.  To create a liability on the part
of the defendant it must have required the combined ef-
fect of the act of God and the concurring negligence to
produce the injury: Baltimore & Ohio Railroad Co. v.
School District, 96 Pa. 65; and if the act was so over-
whelming as of its own force to produce the injury inde-
pendently of the negligence shown, the defendant cannot
be held responsible: Helbling v. Allegheny Cemetery Co.,
201 Pa. 171.

We have discussed the evidence introduced by the
plaintiff and its effect on the liability of the defendant.
There was no attempt by the plaintiff to show that there
was any defect whatever in the telephone, and he relied
solely on the proof of the accident and his injuries to
show that the telephone was not properly constructed,
equipped or protected.  He, therefore, failed to meet the

burden imposed upon him by showing that any negligent act of omission or commission on the part of the defendant company produced or contributed in any way to his injuries. On the other hand, the defendant proved by witnesses, experienced and skilled in the use of electricity and electrical apparatus, that the telephone at the clubhouse was not defective but was in good condition, and that the best known device in general use for protecting persons against injury by abnormal or atmospheric electricity was placed on this telephone. This evidence was not contradicted or impugned in any way. The plaintiff made no attempt to meet or discredit it. It, therefore, appears not only that the plaintiff wholly failed to support the allegations of negligence contained in his statement, but that the defendant company clearly established that at the time of the accident the telephone was properly equipped, operated and protected. This fully met the duty imposed by law on the defendant in the operation of its telephone line.

It is contended by the plaintiff that the failure of the defendant company to place a warning on the telephone against its use during electrical storms was evidence to submit to the jury of the defendant's negligence in the management and operation of the telephone. We do not regard this contention as tenable. It overlooks the well-settled and oft-repeated rule in this state that the test of negligence in methods, machinery and appliances is the ordinary usage of the business. One cannot be convicted of negligence if he employ in his business the methods and appliances in general use by those engaged in a like business; on the other hand, if he fail to use such methods and appliances and an injury results therefrom, he may be required to convince a jury that his methods and appliances were of equal or superior merit to those in general use. If a notice or warning not to use the telephone during a thunderstorm can be regarded as an appliance or equipment, it does not appear, and the plaintiff does not attempt to show, that such a notice has ever been placed by

the defendant or any other company on its telephones. It may be common knowledge, possessed alike by the plaintiff and the public, that it is dangerous to use or be near a telephone or any other good conductor of electricity during a thunderstorm, but it is equally well known and the contrary is not disclosed by the evidence in this case that telephone companies do not ordinarily place signs on their telephones containing such information. If, however, a danger warning had been placed on this telephone, it would not have afforded the plaintiff any protection. He testified that he was inside the clubhouse during the evening, that the weather was not of any concern to him, and that he did not know a thunderstorm was in progress at the time of the accident. It is manifest, therefore, that such a notice would not have deterred the plaintiff from using the telephone, and thereby protected him against the electric shock which he received.

The doctrine of the electric light and power cases cited by the plaintiff is not applicable to the facts of the present case. In those cases it appeared the injury was caused by an electric current which was or should have been under the control of the defendant, and the exercise of proper care by him would have prevented the accident. Here, the undisputed testimony shows that the plaintiff was injured by a current of atmospheric electricity or lightning against which there is no absolute protection but against which the defendant company tried to protect the plaintiff and others using the telephone by placing on it the best and most efficient protection device then known. The distinction between the two classes of cases is, we think, apparent, and certainly very important. The defendant company neglected no duty which the law imposed, and, hence, it is not responsible for the injury which befell the plaintiff.

The facts of this case are not in dispute and they fail to show any negligence on the part of the defendant company which caused the plaintiff's injuries. The learned trial judge should, therefore, have directed a verdict for

the defendant, or subsequently entered judgment for the defendant notwithstanding the verdict.

The assignment of error is sustained and the judgment is reversed, and judgment is now entered for the defendant non obstante veredicto.