LOTTINGER, Judge.
This is a suit for damages for personal injuries sustained by petitioner on June 10, 1951, while using a.telephone installed in his home by the defendant company. The lower court rendered judgment in favor of defendant, and dismissed petitioner’s suit.
Petitioner bases his cause of action upon the plea of res ipsa loquitur and, in the alternative, pleads certain acts of negligence by defendant company which he alleges brought about the accident causing the injuries. The negligent acts alleged alternatively are: (1) That the defendant company improperly wired the telephone receiver which plaintiff was using at the time of the accident; (2) that the telephone line maintained by the defendant company was not properly grounded; (3) that the equipment and lines extending from, defendant’s main transmission lines into plaintiff’s home, as well as the telephone, were- not properly installed and maintained.
The defendant answered alleging no negligence on its part, and that the accident and injury to petitioner was caused by lightning, an act of God, for which it is not responsible; that it installed its line *596 and equipment in and to plaintiff’s home and protected its line with the most modern lightning arresters and equipment known to science. The defendant company further pleads that the petitioner’s negligence in extending a light cord from the power outlet alongside the telephone cord to a bed lamp and clock caused the power current to be induced into the telephone cord, or caused an arc jump of said current by negligently placing these cords alongside or in close proximity of each other. Defendant also pleads the contributory negligence of petitioner on these grounds.
The lower court held that the doctrine of res ipsa loquitur did not apply in this case, and further held that the defendant company was guilty of no negligence, and, accordingly, rendered judgment in favor of defendant company and dismissed the petitioner’s suit. The petitioner has appealed.
The analysis of the evidence and testimony, as given in the reasons for judgment below, is as follows:
“The facts in this case show that on the 10th of June, 1951, at about the hour of 7:00 o’clock p. m. the plaintiff and his minor son were sitting on the bed in the plaintiff’s bedroom, at his home on Riverside Drive in the City of Bogalusa, Louisiana; that the telephone which was attached to an extension cord, was in said bedroom, and that there were two electric cords likewise in said bedroom, which serve an electric clock and a metal reading light on the head of plaintiff’s bed; all of these extension cords were in close proximity to each other in said bedroom. While the plaintiff and his son were sitting on the bed as above mentioned, the telephone rang and the plaintiff’s wife answered it, and the call, presumably being for the plaintiff, she handed the telephone to him, at which time an explosion or shock came from the ear piece of the telephone while plaintiff was holding it to his left ear; and this explosion or shock did cause severe damage to the left ear of the plaintiff.
“On the following morning the plaintiff called Mrs. Bates, Supervis- or for the telephone company, over the telephone and reported the accident. Mrs. Bates’ testimony reflects the plaintiff told her he had been talking on the telephone and lightning had struck it and entered his left ear. The plaintiff admitted he did talk to Mrs. Bates over the telephone and he did not deny that he had told her that lightning had struck it while he was talking over the telephone. In addition to this, both the wife and son of the plaintiff testified that while the plaintiff was holding the telephone to his ear there was a loud report such as the crack of a rifle shot or explosion, and it was at this time that plaintiff was rendered unconscious. The son further testified there was thunder that night in the vicinity of the residence of his father. The evidence further reflects that the weather was inclement to the extent that there was a thunder storm in the City of Bogalusa on the night in question, and while the facts show that the thunder storm was more intense in the southwest section of the city, ■ I am of the opinion that there was considerable thunder and lightning in the southeast section of the city where the plaintiff’s home is located. In addition to this, employees of the defendant company testified that both Mr. and Mrs. Burdett told them that the telephone had been struck by lightning at the time Mr. Burdett was injured. These latter statements are denied by the plaintiff and his wife.
“After the accident an examination was made of the telephone line, as well as the power line leading into the residence, and all of them were found to be in good working order, and the evidence in this case further shows that the equipment of the telephone company was in good working condi *597 tion, and that the protective devices in use at the plaintiff’s residence were the approved types according to the specifications of the National Bureau of Standards and the National Electric Code, and that they are the best devices known to protect against the lightning or outside electrical power coming in contact with telephone lines.”
We have carefully examined the evidence and testimony in this case, and find that the findings of fact by the lower court, are correct. The record conclusively shows that the accident, and the resulting injury to petitioner, was caused by lightning, an act of God. We believe that the record further shows that the bolt of lightning was conveyed into the home of petitioner over the power lines; and that, upon reaching the extension which was overlapped, or in near proximity with the telephone cable, the electrical current was induced into the telephone cable which resulted in the sharp crack, or explosion, in the telephone receiver.
The petitioner strenuously urges that the doctrine of res ipsa loquitur should have been applied by the court below. We, however, feel that the lower court was correct in its conclusion that the said doctrine was not applicable. In its discussion of the doctrine, American Jurisprudence, Volume 38, page 1000, Section 303, states as follows:
“The doctrine of ‘res ipsa loquitur’ has no application where all the facts and circumstances appear in evidence. Nothing is then left to inference, and the necessity for the doctrine does not exist. Being a rule of necessity, it must be invoked only where evidence is absent and not readily available. It is not to be invoked when the evidence is available, and certainly not when it is actually presented. Nor has it any application where the cause of the accident is known and is not in question. Circumstances in addition to the bare physical cause of an injury, attending an accident sometimes supply the necessary circumstantial affirmative evidence to carry the case to the jury upon the question of the defendant’s negligence, and obviate the necessity of invoking the distinctive rule of ‘res ipsa loquitur’. Also, the circumstances may negative the inference of negligence or disclose that due care was used. It has been said that where there is the slightest evidence to explain the happening of the occurrence upon any theory other than that of the negligence claimed, the jury should disregard the inference arising from the fact of injury.
“The ‘res ipsa loquitur’ rule does not apply where it appears that the accident was due to a cause beyond the control of the defendant, such as the presence of* vis major or the tor-tious acts of a stranger. Nor does it apply where an unexplained accident may be attributable to one of several causes for some of which the defendant is not responsible. It should not be allowed to apply where, on proof of the occurrence, without more, the matter still rests on conjecture alone or the accident is just as reasonably attributable to other causes as to negligence. In other words, if the facts and circumstances of the occurrence give rise to conflicting inferences, one leading to the conclusion of negligence, the doctrine does not apply. The ‘res ipsa loquitur’ rule cannot apply in a case where the circumstances surrounding the accident are not such as raise a presumption of negligence. * * * The doctrine of ‘res ipsa lo-quitur’ rule is not applicable where there is divided responsibility and the damage may have resulted from a cause over which the defendant has no control.”
Thus we find that the doctrine of “res ipsa loquitur” is not applicable where all the facts and circumstances appear in evidence, or where it appears that the ac *598 cident was due to a cause beyond the control of the defendant. In our opinion, the doctrine is applicable only where the accident is of such a nature that the facts leading to the accident are solely within the knowledge of defendant, and not petitioner. In the present case, the evidence is complete as to the causes of the accident. The said cause was a thunderstorm during which a bolt of lightning was transmitted into the home of petitioner over the power circuit. The cause of the accident was an act of God, or vis major, over which neither the petitioner nor the defendant had any control whatsoever. The facts and circumstances accompanying the accident did not permit an inference of negligence on the part of the defendant, as it was shown on trial that the defendant’s equipment was in good working order both before and after the accident, and, furthermore, that the protective devices in use at the petitioner’s residence were the approved types according to the specifications of the National Bureau of Standards and the National Electric Code. None of the protective devices were harmed, or broken, by the accident, and the evidence conclusively shows that, had the bolt of lightning entered the home of petitioner over the telephone lines, such devices would have been broken or harmed by the excessive voltage.
The lower court did not conclude that the doctrine of res ipsa loquitur was not applicable until after trial on the merits. In the case of Gerald v. Standard Oil Company of Louisiana, 204 La. 690, 16 So.2d 233, 236, the Supreme Court said:
“Res ipsa loquitur is often found to be appropriate in cases involving explosions. It is not a rule of pleading or of substantive law; rather, it is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial.” (Italics ours.)
 Thus the applicability of the rule is not to be determined until the conclusion of the trial. The lower court found, and the evidence conclusively shows, that the accident was a result of lightning or an act of God. The doctrine is not applicable when it appears that the accident was due to a cause beyond the control of defendant, such as the presence of a vis major, or an act of God. 38 Am.Juris., Sec. 303, p. 1000; Rocap v. Bell Tel. Co., 230 Pa. 597, 79 A. 769, 36 L.R.A.,N.S., 279.
We, therefore, concur with the holding of the lower court that the doctrine of “res ipsa loquitur” did not apply in the present case, as the accident was due to a cause beyond the control of defendant, viz., an act of God.
The inference of negligence being eliminated, we must next turn to the charges of negligence as found in the petition. Petitioner first claims that the defendant improperly wired the receiver which he was using at the time of the accident. There is no evidence in the record to substantiate said claim. He, secondly, claims that the telephone line maintained by defendant was not properly grounded. The petitioner has not proved this fact to our satisfaction, as a matter of fact the defendant has shown that the telephone line was grounded as it entered the home of petitioner, and furthermore, the record shows that the charge did not enter petitioner’s home on the telephone lines. There is evidence that the charge entered petitioner’s home over the power line as the power line was grounded at the pole and not at the home. The third and last ground alleged by petitioner is that the equipment and lines extending from defendant’s main transmission lines into petitioner’s home, as well as the telephone were not properly installed and maintained. This is the only allegation which has some merit.
We do not believe that this third allegation, that the equipment and lines were not properly installed and maintained, was proved by a preponderance of the evidence. The evidence clearly shows that the company used all of the modem devices known to science to eliminate the extra charge of power coming into the house by lightning. The evidence shows *599 that a system of fuses were used by defendant as a protection against any excessive outside ■ current entering the home of petitioner over the telephone lines. These fuses were situated where the said lines entered the home of petitioner. The fuses were checked by defendant’s employees a short time after the accident, and were found to be in perfect working order. The testimony shows that no excessive current could have entered the home over the telephone lines, as such charges would have broken the fuses and the connection would have been rendered inoperative.
A sketch was introduced into evidence to show the location of the telephone outlet, which is the small box at the end of the telephone cable. This plat shows that the outlet was on the north wall of petitioner’s bedroom. The plat further shows that a power outlet, or electrical wall plug, was situated on the west wall of the bedroom. The bedroom was approximately 13 x 14 feet in dimension, and the electrical plug and the telephone outlet were approximately eleven feet from each other.
The only thing that was hazardous or dangerous in the set-up, was the fact that the long extension cord from the power outlet over-lapped and in some places entangled with the telephone cord. The long extension cord from the power outlet and the telephone cord are not power lines or telephone lines in their truest senses, but are merely electric, or telephone, cords to be used in a building extending from a receptacle. The sketch as found in the record shows that the extension cord from the power outlet is more than twice the length of the telephone cord and is not nailed down, but can be moved around the room at will. Had the power extension cord been of a permanent type, or had been an immovable by destination, and the telephone company had subsequently come along and installed its permanent construction of a telephone line alongside and in close proximity of the extension cord, then the petitioner might have some complaint. But that is not the case before us. At the time of the installation of the telephone, the defendant company had no knowledge that the petitioner would place his telephone in such a position that the wires would overlap or become entangled. As a matter of fact, the sketch shows that the most convenient place for the telephone would have been on the other side of the bed from the power extension cord, as such position would have been closer to the telephone outlet.
There is nothing in the record which states that the petitioner, or his family, instructed the defendant to place the telephone outlet where it did so that petitioner could place the telephone on a table on the west wall, and in the position that he finally did, and thereby cause the two cords to overlap. The record does show that defendant was instructed to place the telephone outlet where it did, but that doesn’t give the inference nor the conclusion that the telephone was to be placed in the location where it finally came to be before the accident. The long extension cord extending from the power outlet to the bed, as well as the placing of the tele7 phone on the table alongside of the west wall was solely a creation of the petitioner and not the defendant.
The telephone outlet was situated in the back of the bed and on the north wall; and the shortest and most convenient location to place a telephone near that bed would have been along the north wall and on the opposite side of the bed from the power extension cord. It can be very easily said that, in the absence of instructions of information to the contrary, the defendant could have assumed and taken for granted that the telephone would have been placed near the bed alongside the north wall, at the closest and most convenient location, instead of on the west wall as was done in this case. The placing of the telephone in the dangerous location was exclusively the act of petitioner, and it was an act of which defendant had no knowledge. Nor did the defendant have any reason to assume . that the telephone would be placed in the said location.
*600 Under the circumstances as here-inabove discussed, we do not believe that the defendant was negligent. To hold defendant guilty of negligence, under the circumstances as found in the record, would make them an insurer for all contingencies and damages that might arise as a result of having a telephone in a home. The record discloses no negligence in the installation or maintenance of the telephone by defendant. The negligent act of placing the telephone near the electrical extension cord was the sole act of the petitioner, and the defendant had no knowledge, nor did it have reason to assume, that the telephone would be placed in such a position.
For the reasons assigned, the judgment of the lower court will be affirmed. All costs of this appeal to be paid by petitioner.
Judgment affirmed.