## Baltimore and Ohio Railroad Co. *versus* Sulphur Spring Independent School District.

96  65
201  174

96     65
203   ⁵518
96       65
f 27 SC ²463

96     65
30 SC ²318

96    65
32 SC ² 77
33 SC ²586

96     65
f 36 SC ²316

96   65
39SC ²610

1. In the construction of a culvert under a railroad, the engineer of the company declared to a bystander, in no way connected with the road, that he thought the culvert would prove insufficient in a flood.  Twenty-five years thereafter suit was brought against the lessee of the company for damages for an injury resulting from an overflow of the embankment, and the party to whom these declarations of the engineer were made was permitted to testify thereto : *Held*, that this was error ; that said declarations were inadmissible to bind the defendant in any way whatever.

2. The concurring negligence which, when coupled with the act of God produces an injury, must, in order to render a defendant responsible, be such as is in itself a real producing cause of the injury and not a merely fanciful or speculative negligence, which may not have been in the least degree the cause of the injury.

3. A railroad company, in constructing its road and works is bound to bring to their execution the engineering knowledge and skill ordinarily known and practiced in such works.  There is no liability on a company for not constructing a culvert so as to pass extraordinary floods.

4. Pittsburgh, Fort Wayne and Chicago Railroad Co. *v.* Gilleland, 6 P. F. Smith 445, followed.

October 28th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Westmoreland county:* Of October and November Term 1880, No. 232.

Case by the Sulphur Spring Independent School District of Sewickley township, Westmoreland county, against the Baltimore and Ohio Railroad Company, lessee of the Pittsburgh and Connellsville Railroad Company.

It appeared that the portion of the defendant's road which passed through Sewickley township was constructed in 1855.  To procure the proper grade it was found necessary to make an embankment about twenty feet high across the mouth of Shaner's Hollow, and construct therein boxes, or, in the technical terms used by the engineers barrels, to vent the water of the rivulet under the embankment.   Three barrels were built with stone bottom, sides and top. A stone lodged in one barrel, and on account of its size and the inability of the local repairmen to move it, and of the decreased water-flow, and because the other two at all times vented the water, it was suffered to remain there, and this left but the two barrels to carry off the water.   In 1876 the Pittsburgh and Connellsville Railroad was leased by the defendant company, which has since operated it.

On Wednesday, July 23d 1879, a heavy rain occurred, which washed dirt and debris down this stream and filled up the culvert. This was discovered by the supervisor of the division on the evening of Thursday, July 24th 1879.   On Saturday morning, July 26th 1879, he and his gang commenced cleaning out the barrels of

15 NORRIS—5

the culverts.   When the gang ·had one barrel entirely clean and the second very nearly so, a rain of great violence began and continued for the space of thirty or forty minutes, and the water rose with great rapidity above the level of the track some two feet, and with such force as to wash away the superstructure of the railroad, including rails, sleepers, ballast and switch for a double track, and also from six inches to two feet of the top of the embankment.   The school house of plaintiff below was on the right side of this hollow, and its foundation was from nine to eleven inches higher than the top of the rail on the track, and it was lifted bodily off of its foundation and carried over the embankment, and into or near the Youghiogheny river, where it was broken to pieces, and for the damages thus occasioned this suit was brought.

There was a conflict of testimony as to how far the stoppage of the culverts was the real cause of the injury.   Witnesses on behalf of plaintiff testified that the culverts were not of sufficient capacity to carry off the waters from ordinarily violent storms.   Others were of opinion that if the culverts had been open the water would have been carried off and no injury done.   Witnesses for the defendant on the contrary were of opinion that it would have taken one hundred and twenty similar culverts to have carried off the water; that it would have been necessary to perforate the embankment with such culverts to provide against such a flood.

The plaintiff offered to prove by Alexander Fulton that he owned land on the line of the Pittsburgh and Connellsville Railroad Company in 1856, and notified the engineer who was then employed by the Pittsburgh and Connellsville Railroad Company, and was engaged in the erection and construction of said barrels or culverts at Shaner's Station for the said company, that they were insufficient to receive and discharge the volume of water, and that the engineer replied he knew that they were not sufficiently large to receive the water.

Objected to because vague and uncertain, and not notice to any one in the employ of the Pittsburgh and Connellsville Railroad Company's service having plenary power and able to bind the same. Because while this defendant may be liable for any insufficiency that exists in fact, it is not visited with notice given to others. Because incompetent and irrelevant.

Objections overruled and offer received.   (Second assignment of error.)

The witness then testified : " At the time of the construction of the Pittsburgh and Connellsville Railroad Company along by Shaner's Station, I lived right beside the railroad, about two hundred yards from this particular point.   When the engineer who had charge of the construction of these culverts came there, we attended a meeting they had and wanted them to make a culvert so large that we could get a road through down to the river.   I

[Bal. & Ohio Railroad Co. *v.* Sulphur Spring School District.]

told the engineer that these culverts were too small at any rate. He said himself they were not sufficient in that shape from what he had seen of the floods there that summer. This was in 1856. He said the chief engineer would not change the culvert. He said that he had reported it to the chief engineer, but he thought it was sufficient and would not change it."

The first and second points of the plaintiff, which the court, Hunter, P. J., affirmed, were as follows:

1. If there was negligence on the part of the defendant, concurring with the act of God at the time plaintiff's loss was sustained, then the defendant is liable, and the jury are not bound to inquire whether the loss would have happened had they not been guilty of negligence.

2. It is not necessary to the plaintiff's recovery to show negligence on the part of the defendant, which contributed equally, or in a large degree, along with the act of God, to cause the loss; but if the defendant's negligence in any degree caused the loss, it would be liable in damages for the injury sustained by the plaintiff. The affirmation of these points constituted the fourth assignment of error.

Verdict for plaintiff for $1525.88, and after judgment thereon defendant took this writ and alleged that the court erred, inter alia, in the admission of the above evidence and in affirming the foregoing points.

*Markle & McCullogh,* for plaintiff in error.—A verbal notice to an employee of the Pittsburgh and Connellsville Railroad Company, without authority and discretion, in 1856, and his admissions, are not competent evidence to bind the Baltimore and Ohio Railroad Company simply because the latter leased the railroad of the former in 1876. The declarations of the resident engineer of another railroad are hearsay as against the defendant, and, therefore, incompetent. This being the only testimony calling in question the sufficiency of the culvert, and being incompetent, it was error to submit to the jury the question of the sufficiency of the culvert as originally constructed. By the affirmance of plaintiff's points the court held the defendant to absolute care and diligence. Surely it is not a guarantor of the safety of property from extraordinary floods, and that, too, of property not abutting on its right of way: Pittsburgh, Fort Wayne & Chicago Railroad Co. *v.* Gilleland, 6 P. F. Smith 445; Hey *v.* Philadelphia, 31 Id. 44; McCully *v.* Clarke & Thaw, 4 Wright 399.

*Hazlett & Williams, John F. Wentling* and *James S. Moorhead,* for defendant in error.—The admissions of the engineer were made at the time of the particular transaction, which is the subject of inquiry, and while acting within the scope of his authority, and are, therefore, within the rule laid down in Huntingdon Railroad

[Bal. & Ohio Railroad Co. *v.* Sulphur Spring School District.]

Co. *v.* Decker, 1 Norris 119 ; Dick *v.* Cooper, 12 Harris 217 ; Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 339 ; Whart. on Ev., sect. 1170. The measure of the defendant's duty was properly defined : Bell *v.* McClintock, 9 Watts 119 ; Livezey *v.* Philadelphia, 14 P. F. Smith 106 ; Knoll *v.* Light, 26 Id. 268.

Mr. Justice GREEN delivered the opinion of the Court, November 22d 1880.

On the trial of this cause, the plaintiff made the following offer of proof by the witness, Alexander Fulton, viz. : " That he owned land on the line of the P. & C. Railroad Co. in 1856, and notified the engineer who was then employed by the P. & C. Railroad Co., and was engaged in the erection and construction of said barrels or culverts at Shaner's Station for the said company, that they were insufficient to receive and discharge the volume of water. That the engineer replied he knew they were not sufficiently large to receive the water." A similar offer, with a somewhat less precise designation of the character of the work in which the engineer was engaged, had been previously made and rejected, under objections by the defendant, but when repeated in the form last offered, the objections were overruled and the evidence was admitted. The witness then proceeded to testify that in 1856 he told the engineer who had charge of the construction of the culverts at Shaner's Station that they were too small and that the engineer had said in reply that " they were not sufficient in that shape from what he had seen of the floods there that summer." We think this testimony was erroneously admitted. The witness did not name the person with whom he held this conversation, so that it could with certainty be determined whether he was correct in his supposition that he was the engineer in charge of the construction, or so that an opportunity for a possible contradiction would be afforded. Moreover, the person, whoever he was, was not an agent of the defendant, but of another corporation which twenty-four years before had built the railway and culvert. Again, the testimony itself was but the opinion of the engineer as to the sufficiency of the culvert, communicated to another, and that opinion he could give directly to the jury. Its communication to another who was an entire stranger to the defendant, nearly a quarter of a century before the trial, certainly could not suffice to bind the defendant in any manner whatever. The second assignment of error is therefore sustained. We are also of opinion that the court erred in their answers to the plaintiff's second and third points. In affirming the first point, the court ruled that : " If there was negligence on the part of the defendant concurring with the act of God, at the time plaintiff's loss was sustained, then the defendant is liable, and the jury are not bound to inquire whether the loss would have happened if the defendant had not been guilty of negligence." As we understand

[Balt. & Ohio Railroad Co. v. Sulphur Spring School District.]

this point, it practically declares that although the act of God alone, without any negligence of the defendant would have caused the injury, the jury were not at liberty to consider that fact, if in reality there was negligence on the part of the defendant concurring with the act of God. In other words, no matter how terrible, extraordinary and unprecedented were the storm and flood, so that they alone caused the injury, yet if there was concurring negligence of the defendant, although it did not produce the injury, and its absence would not have prevented it, still the defendant would be liable. The same idea is repeated in the plaintiff's second point, that if the defendant's negligence in any degree caused the loss, they would be liable. Now a small pebble in one of the culverts would in some small degree, impede the course of the water, yet the doctrine of this point, which the court affirmed, would make the defendant liable for the entire injury, even though a huge avalanche of water were suddenly launched upon the stream and hurled with irresistible force upon the embankment and culvert in question. Such is not the law. This is the very highest possible degree of care, greater even than is required of railroad companies in the carriage of passengers. The correct doctrine on this subject was expressed in the case of the Pittsburgh, Fort Wayne and Chicago Railway Co. v. Gilleland, 6 P. F. Smith 445, to wit: A railroad company in constructing its road and works is bound to bring to their execution the engineering knowledge and skill ordinarily known and practised in such works. There is no liability on the part of a railroad company for not constructing a culvert so as to pass extraordinary floods. On page 452, AGNEW, J., delivering the opinion of the court, says: "In the present case, then, if the culvert was so unskilfully and negligently constructed as to be insufficient to vent the ordinary high water of the stream, the railroad company building it would have been liable for the injury thereby caused. The apparent facts indicate the duty. The stream, though small, must find a vent, or overflow the adjacent land and undermine the railroad. Its size, the character of its channel, and the declivity of the circumjacent territory which forms the watershed, indicated the probable quantity of water to be passed through. Proper engineering skill should observe these circumstances, and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage so as to cause a reflux in times of ordinary high water. Beyond this, prudent circumspection cannot be expected to look, and there is, therefore, no liability for extraordinary floods, those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one." Here is a plain, easily understood and carefully stated rule of duty and of liability. In the main, the court below adhered to this rule, but in the an-

[Balt. & Ohio Railroad Co. *v.* Sulphur Spring School District.]

swers to the plaintiff's first and second points they went beyond it, and in this there was error. We apprehend that' the concurring negligence, which, when combined with the act of God, produces the injury, must be such as is in itself a real producing cause of the injury, and not a merely fanciful or speculative or microscopic negligence which may not have been in the least degree the cause of the injury. In other words: If the act of God in this particular case was of such an overwhelming and destructive character, as by its own force, and independently of the particular negligence alleged or shown, produced the injury, there would be no liability, though there were some negligence in the maintenance of the particular structure. To create liability it must have required the combined effect of the act of God and the concurring negligence to produce the injury. The present case affords a fair illustration of the reason for this distinction. The defendant's witnesses testified that the force and volume of the water were so very great that it would have required one hundred and twenty such culverts to pass it off. Hence, if the three culverts were in the most perfect condition, they would not at all have prevented the injury, and therefore the fact that they were somewhat obstructed might be quite immaterial. If the jury believed this testimony, it might have had a most important bearing upon their verdict, to the extent even of inducing them to find in favor of the defendant. But the case was not put to them in that way, and they had no opportunity of considering it in that aspect. For these reasons we sustain the second and fourth assignments of error. The other assignments are not material and are not considered.

Judgment reversed, and *venire facias de novo* awarded.