Samuel **FREIFIELD**, Administrator of the Estate of Gerald R. McFall, Jr., Deceased, Appellant,

v.

John E. **HENNESSY**, Appellee.

No. 15016.

United States Court of Appeals Third Circuit.

Argued Feb. 19, 1965.

Decided Nov. 29, 1965.

Rehearing Denied Dec. 30, 1965.

Kirkpatrick, District Judge, dissented.

Gary F. Sharlock, Pittsburgh, Pa. (Mercer & Buckley, Pittsburgh, Pa., Milford L. McBride, Jr., Grove City, Pa., on the brief), for appellant.

Albert E. Acker, Sharon, Pa. (Cusick, Madden, Joyce, Acker & McKay, Sharon, Pa., on the brief), for appellee.

Before KALODNER and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

WILLIAM F. SMITH, Circuit Judge.

The present appeal is from a judgment entered on a jury verdict in favor of the defendant in an action under the Wrongful Death and Survival Acts of Pennsylvania, 12 P.S. § 1601 and 20 P.S. § 320.601. We have considered each of several errors assigned but find it necessary to discuss only one, which in our opinion clearly warrants reversal.

As an affirmative defense to the charge of negligence the defendant answered that immediately before the accident he suffered an unexpected loss of consciousness and that his conduct subsequent thereto "was involitional and therefore excusable." This raised the critical liability issue on which the action was tried.

█ It is generally recognized that an automobile operator who, while driving, is suddenly stricken by an unforeseeable loss of consciousness is not chargeable with negligence. Annotation: 28 A.L.R. 2d 35–38 § 15; 8 Am.Jur.2d 244 § 693; 2 Harper and James, Law of Torts, pp. 920, 921 § 16.7. Absent any case directly in point we assume that this is also the law of Pennsylvania. See Lobert v. Pack, 337 Pa. 103, 9 A.2d 365, 367. However, if such an operator is aware that he is subject to attacks in the course of which he is likely to lose consciousness, he may be charged with negligence. Ibid. The application of this exception is dependent, of course, upon the circumstances and conditions under which the attack occurs. The evidence in the instant case must be viewed in the light of these principles.

The plaintiff's decedent, a youngster five years of age, was fatally injured when struck by an automobile owned and operated by the defendant. At the time of the accident the decedent was at play in front of his home and was struck when the automobile mounted the sidewalk. There was ample evidence to establish a prima facie case of negligence and to place upon the defendant the burden of exculpation. He explained that immediately prior to the accident he suffered a momentary loss of consciousness, which he described as a "blackout."

On the morning of the accident the defendant, a mill hand, arose at approximately nine o'clock and shortly thereafter was seized by a gastrointestinal upset, accompanied by diarrhea. He apparently considered his illness sufficiently serious to warrant his reporting off duty for the day. At approximately twelve o'clock he left his home in Stoneboro, thirteen miles from Grove City, intending to pick up his wife, who was visiting with their daughter in Butler. As he drove along South Center Street in Grove City, approaching the intersection of the said street with West Pine Street, he was stricken with a condition which he described as follows: "I felt my head filling up, sort of, * * *." This condition was apparently preceded by a severe headache which lasted two minutes or more. When stricken he decided to turn into West Pine Street and bring his car to a stop at the curb. As he made the turn he momentarily lost consciousness. The car mounted the curb and traveled a distance of approximately 150 feet, striking the decedent en route.

After the accident the defendant was taken to the Grove City Hospital where he was examined by a physician and then discharged. There is no evidence in the record as to the results of this examination. When the defendant returned home he visited his family physician who ordered that he be hospitalized for the purpose of further examination. Thereafter he was referred to a neurosurgeon who hospitalized him for eight days. During this period he was subjected to a series of clinical examinations and various recognized neurological tests. The tests were negative except for certain findings which the neurosurgeon regarded as of minor significance.

On the basis of the history given by the defendant, the clinical examinations and the results of the tests, the neurosurgeon concluded: " * * * this episode of unconsciousness [on the day of the accident] must have been related to a circulatory change and by that I mean

a drop in blood pressure or some change in his circulation which resulted in what I suppose could best be described as a faint or a fainting attack." This conclusion would seem to be consistent with the earlier medical history of the defendant as to which there is ample evidence in the record.

The defendant, who was 55 years of age at the time of the accident in 1962, was first attended by his present family physician in December of 1953, when he complained of an "upset stomach," which was followed by a fainting spell. It was then discovered that he suffered from hypotension, lowered blood pressure. Thereafter, between December of 1956 and December of 1961, he was treated at various times for ulcers, gastroenteritis, diarrhea, and hypotension. In November of 1958, he was suddenly stricken with a gastrointestinal disturbance accompanied by a loss of consciousness. At that time he was hospitalized for two days.

■ The issue raised by the charge of negligence and the affirmative defense was properly submitted to the jury. The instructions on this issue, although somewhat confusing, were substantially in accord with the legal principles hereinabove stated. If the verdict was predicated upon a determination that at the time of the accident the defendant suffered an unforeseeable loss of consciousness there would be no cause for reversal of the judgment. However, we cannot ascertain from the record that this was the basis of the verdict.

■ The court below fell into reversible error when it submitted to the jury another issue which had not been properly raised and as to which there was no evidence. Morran v. Pennsylvania Railroad Company, 321 F.2d 402, 403 (3rd Cir. 1963); O'Neill v. Reading Company, 306 F.2d 204, 206, and the cases therein cited. He instructed the jury, in effect, that the defendant should be exonerated from liability if it was found that the condition from which he suffered at the time of the accident was the "result of an act of God." These instructions were improper and highly prejudicial. There was no evidence in the record upon which the jury could have predicated a finding that the defendant's condition immediately prior to the accident was attributable to an "act of God" as that term is used in the civil law.

■ An "act of God," as defined in the law of Pennsylvania, "is an unusual, extraordinary, sudden, and unexpected manifestation of the forces of nature which cannot be prevented by human care, skill or foresight." Carlson v. A. & P. Corrugated Box Corporation, 364 Pa. 216, 72 A.2d 290, 291. The loss of consciousness from which the defendant suffered at the time of the accident, and on two prior occasions, was not so unusual and extraordinary as to warrant its being attributed to "an act of God." It is a matter of common knowledge, of which we may take judicial notice, that humans are subject to a variety of illnesses which should not be described as results of the "acts of God."

■ The defendant argues that since the plaintiff interposed no objection to the court's instructions he may not now complain of error therein. This argument is in accord with the general rule which is subject to exception. Hormel v. Helvering, 312 U.S. 552, 557, 558, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Mazer v. Lipschutz, 327 F.2d 42, 52 (3rd Cir. 1964); McNello v. John B. Kelly, Inc., 283 F.2d 96, 101, 102 (3rd Cir. 1960); Callwood v. Callwood, 233 F.2d 784, 788 (3rd Cir. 1956). Where it is apparent on the face of the record that counsel failed to object to a fundamental and highly prejudicial error, and this failure may have resulted in a miscarriage of justice, the error must be noticed and rectified. Ibid. This exception to the general rule is applicable to the instant case.

The judgment of the court below will be reversed and the action will be remanded with instructions that a new trial be ordered.

KIRKPATRICK, District Judge (dissenting).

I find myself unable to agree with the premise on which the majority bases its conclusion that this case would have to be reversed, namely, that the court in its charge submitted two separate issues to the jury. One of these issues, the majority says, was whether the defendant at the time of the accident suffered a sudden and unforeseeable loss of consciousness, and the other, whether the condition from which he suffered at the time of the accident was the result of an "Act of God." This, it seems to me, is a mistaken view of the court's charge. Actually, there was only one issue submitted.

The following excerpts from the charge show convincingly that the single issue submitted was whether the defendant suffered a fainting spell which came so suddenly that he was deprived of the ability to act as a reasonable and prudent person would have acted in continuing to drive his vehicle in the manner that he did after this condition first struck him. In submitting this issue, the court said,

> "If you find that the condition which confronted him was such that he had no time or opportunity to stop or cease the operation of the vehicle, and that his mental and physical condition was such that he was not capable of sense perception and judgment and that he did what a reasonably prudent person would have done under the circumstances or should have done under the same circumstances, then his conduct could not be conscious and his condition would be the result of an Act of God and he would not be responsible for the manner in which the automobile was operated and driven when it struck and killed this child."

The other reference to Act of God in the charge was to the same effect.*

This was giving an incorrect name to the rule, but, though the label may have been a wrong one, it certainly did not make a separate issue.

The majority agrees that the instructions upon the basic issues were substantially in accord with legal principles and that, if the verdict was predicated upon a determination that at the time of the accident the defendant suffered an unforeseeable loss of consciousness, there would be no cause for reversal of the judgment. However, the majority says, we cannot ascertain from the record that this was the basis of the verdict.

It seems to me that under the charge of the court the verdict could have been predicated upon no other theory and could not have had any other basis. Granted that there was no evidence upon which the jury could have found that the defendant's condition was attributable to an Act of God *as that term is used in the civil law*, there was ample evidence to sustain its finding that the defendant's condition was attributable to an Act of God *as that term was defined by the judge* in his charge. A jury is supposed to take its definition of a term used in the charge from the judge who uses it. It is not an unwarrantable assumption that this jury did not consult the law reports and that they had no idea that "Act of God" meant anything other than what the judge said it meant.

The fact that no exception was taken to the charge places the case in a position in which this court would have to find not only that there was error but that the error was of such a fundamental nature and so likely to accomplish a gross miscarriage of justice that an objection to the charge was unnecessary.

There is no doubt, as the majority opinion recognizes, that the judge correctly charged the jury as to the applicable law of negligence and as to the burden of proof upon the defendant to

---

* "You should consider as Mr. Hennessy was driving his car through Grove City whether or not when this condition arose, whether it was or was not an Act of God, something that he had no idea, no reason and no basis to think was ever going to happen to him."

overcome the inference of negligence arising from the fact that his car struck the boy on the sidewalk. I think not only was the court's misnomer of principles correctly stated not error of any such magnitude, but it seems to me that it was quite harmless and that the injustice, if any, would be to this defendant in compelling him to defend himself in another trial after a jury has found a verdict in his favor after a perfectly correct charge upon the basic matters of what constitutes negligence and where the burden of proof lies, merely because the judge gave the legal principles involved an incorrect name—a name the meaning of which the jury could have known nothing beyond what the judge told them. I do not think that Rule 51 should be by-passed by a finding of such a purely technical error.