**WOODBINE AUTO, INC. and Eric Rooney and Joseph Rooney and Jessie Lydia Rooney and Woodbine Property, Inc.**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Consolidated Rail Corp. and National Railroad Passenger Corp. and City of Philadelphia.**

No. CIV. A. 96–CV–6265.

United States District Court,
E.D. Pennsylvania.

June 16, 1998.

---

Harry J. Sher, Philadelphia, PA, for Plaintiffs.

David Walker, SEPTA Legal Department, Philadelphia, PA, for Septa.

Joseph J. McAlee, Gallagher, Reilly & Lachat, Philadelphia, PA, for Nat'l Railroad Passenger Corp.

David Bennethum, Asst. City Solicitor, Philadelphia, PA, for City of Philadelphia.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendants National Railroad Passenger Corporation ("AMTRAK") and the City of Philadelphia now move for the entry of summary judgment in their favor on all of the plaintiff's claims against them. For the reasons which follow, the motions must be denied.

### Background

In the late afternoon and early evening hours on July 14, 1994, the greater Philadelphia area experienced a series of severe thunderstorms accompanied by high winds and heavy rain. In the course of these storms, the plaintiffs' real and personal property located at 2161–2171 North 62nd Street in the City of Philadelphia were flooded and consequently damaged. Plaintiffs commenced this lawsuit against defendants Amtrak, Septa and Conrail, as well as against the City, alleging that the railroad defendants should be held liable for plaintiffs' damages because in the course of their ownership, possession and control of the real estate and railroad right of way, these defendants artificially diverted rain water and increased the quantity of rainwater such that it would flood neighboring streets and property. (Complaint, ¶ s11–15). Plaintiffs further aver that Amtrak, Conrail[1] and Septa were negligent and careless in that they purportedly failed to inspect and maintain the area where the flooding occurred, failed to warn them and failed to prevent or diminish the flooding. (Complaint, ¶ 17).

As against the defendant city, plaintiffs allege that its sewer system was in a dangerous condition in that it would back up and cause flooding in the area of Woodbine Avenue, Upland Way and 62nd Street. This dangerous condition, plaintiffs further aver, was caused by the City's alleged failure to properly inspect, repair and maintain the system. (Complaint, ¶ s18–22).

By way of its motion, Amtrak submits that it is entitled to judgment in its favor as there is no evidence that it ever did anything to increase the quality or quantity of the water flow in the area between Woodbine Avenue and Overbrook station and because plaintiffs' damages were caused by an act of God and not by any negligence on its part. The City likewise contends that there is no evidence that a failure to maintain the storm sewers caused plaintiffs' damages and they cannot recover for damages caused by flooding due merely to the inadequacy of municipal storm sewers.

### Summary Judgment Standards

The standards for determining whether summary judgment is properly entered in cases pending before the district courts are governed by Fed.R.Civ.P. 56. Subsection (c) of that rule states, in pertinent part,

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d

---

1. By order dated June 8, 1998, this Court granted defendant Conrail's motion for summary judgment as there was no evidence that Conrail owned, possessed or controlled the property at issue.

1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response...must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

A material fact has been defined as one which might affect the outcome of the suit under relevant substantive law. *Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (M.D.Pa.1995) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.,* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

### A. Plaintiffs' Claims Against Amtrak.

 Pennsylvania adheres to the common law or "common enemy" rule that regards surface waters as a common enemy which every proprietor must fight to get rid of as best he may. *Strauss v. City of Allentown,* 215 Pa. 96, 63 A. 1073 (1906); *LaForm v. Bethlehem Township,* 346 Pa.Super. 512, 499 A.2d 1373, 1378 (1985). Under this rule, not only is an owner of higher land under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other, but he can, at least in the development of urban property, improve his land by regrading it or erecting buildings thereon without legal responsibility for any consequent diversion of surface waters from his property to that of adjoining owners. This is because the law recognizes that changes or alterations in the surface may be essential to a landowner's enjoyment of his property. *LaForm,* 499 A.2d at 1378 citing *Chamberlin v. Ciaffoni,* 373 Pa. 430, 434–435, 96 A.2d 140, 142 (1953). *See Also: Rau v. Wilden Acres, Inc.,* 376 Pa. 493, 103 A.2d 422 (1954).

 However, a landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. *Leiper v. Heywood–Hall Construction Company,* 381 Pa. 317, 113 A.2d 148 (1955); *Ridgeway Court, Inc. v. Landon Courts, Inc.,* 295 Pa.Super. 493, 442 A.2d 246, 247–248 (1981). Indeed, in Pennsylvania, property is held under the implied obligation that the owner shall use it in such a way as not to be injurious to the community. *Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 313 (1995) quoting *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926). Thus, no one may use his property to inflict avoidable harm upon others, especially when that property fronts, abuts, or skirts public highways. *Bowman v. Columbia Telephone Company,* 406 Pa. 455, 460, 179 A.2d 197, 200 (1962).

In this case, while scant, there is sufficient evidence to suggest that Amtrak may have artificially altered the natural flow of rainwater from its Track 4 and railroad right of way

area onto the neighboring properties. Specifically, plaintiffs have produced deposition testimony from Amtrak Track Supervisor Amedeo Pirelli and Senior Civil Engineer Norman Satterthwaite as well as expert reports from Anthony DeFalco and William Wehner, both engineers, that on July 14, 1994 a large quantity of rainwater flowed down the railroad right of way and caused a washout and erosion around Amtrak's Track 4. As a result of this washout, the street and area beneath the Woodbine Avenue Bridge was covered with a significant amount of mud and ballast which was six to eight inches thick in some locations and which likely blocked the stormwater inlets along 62nd Street and Woodbine Avenue. (Exhibit "F" to Defendant Amtrak's Motion for Summary Judgment; Exhibits "B," "D," "G," "H," "I" to Plaintiffs' Response to Motion for Summary Judgment). In Mr. DeFalco's opinion, the washout was caused in part by a failed tie rail retaining wall which had the effect of inadvertently diverting water from its natural channel—the railroad track system, onto the adjoining real property and then into a "bowl" formed from the natural depression which exists at the intersection of 62nd Street and Woodbine Avenue. (Exhibit "C" to Plaintiffs' Response to Defendant Amtrak's Motion for Summary Judgment). As the July 28, 1994 interoffice memorandum authored by Mr. Satterthwaite notes, "[m]ost of the erosion along the ditch occurred closer to Woodbine Avenue where 400 feet of the sidetrack had recently been removed to permit realignment of Track 4 and installation of a lead track to the new Septa Overbrook maintenance facility..." As we find that this evidence is adequate to raise a genuine issue of material fact, we are constrained to deny Amtrak's motion for summary judgment.

**B. Plaintiffs' claims against the City of Philadelphia.**

The City of Philadelphia is a local agency within the meaning of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.* ("PSTCA").[2] Under this Act, "[e]xcept as otherwise provided..., no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Thus, the City is covered by a general cloak of immunity from suit unless the plaintiffs can plead and prove that their cause of action falls within an exception to immunity. *Mickle v. City of Philadelphia,* 669 A.2d 520, 522–523 (Pa.Cmwlth.1996).

Section 8542 of the PSTCA, in turn, delineates the exceptions to this general grant of immunity. That section provides:

**(a) Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Section 8542(b) designates eight exceptions to immunity. These include: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. In this case, plaintiffs have alleged that the "City of Philadelphia owns the sewer system on or near Woodbine Avenue in the vicinity of Upland Way and 62nd Street, Philadelphia, Pennsylvania," and that "[t]he sewer system would back up and cause flooding in

---

**2.** A "local agency" is defined as "[a] government unit other than the Commonwealth [state] government. The term includes an intermediate unit." 42 Pa.C.S. § 8501.

the aforesaid area and this was a dangerous condition." (Complaint, ¶s18, 20). In so alleging, plaintiffs have invoked the utility services exception to immunity set forth in Section 8542(b)(5) which permits a local agency to be held liable for:

"[a] dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition."

Given the express intention of the Pennsylvania legislature to insulate political subdivisions from tort liability, the exceptions to immunity are to be strictly construed and interpreted. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). A storm water management system such as involves culverts, basins, swales and/or drains has been repeatedly held by the Pennsylvania Commonwealth Court to be the equivalent of a "sewer" for purposes of the immunity statute. *See, e.g.: Staffaroni v. City of Scranton,* 153 Pa.Cmwlth. 188, 620 A.2d 676 (1993); *DeTurk.v. South Lebanon Township,* 116 Pa.Cmwlth. 557, 542 A.2d 213 (1988); *Medicus v. Upper Merion Township,* 82 Pa.Cmwlth. 303, 475 A.2d 918 (1984). Thus, while a municipal entity cannot be held liable for an inadequate storm water management system, liability may be assessed where it has been shown that the system was negligently constructed or maintained. *City of Washington v. Johns,* 81 Pa.Cmwlth. 601, 474 A.2d 1199, 1201–1202 (1984); *Yulis v. Borough of Ebensburg,* 182 Pa.Super. 423, 128 A.2d 118 (1956).

Applying all of the preceding to the case at hand, we find that plaintiffs have adduced sufficient (albeit scant) evidence against the city to survive its motion for summary judgment. In this regard, plaintiff Eric Rooney testified that there were floods in the area of 62nd and Woodbine dating back some thirty years but that since the July 1994 flood, the City has been cleaning the area every two weeks with the result that no water has accumulated since that time at the low point under the Woodbine Avenue bridge. (Exhibit "B" to Plaintiffs' Answer to City of Philadelphia's Motion for Summary Judgment; Exhibit "D" to City's Motion for Summary Judgment). This testimony, coupled with a May 16, 1990 letter from the Philadelphia City Planning Commission to the Water and Sewer Systems Planning Unit referencing a meeting with residents of the area concerning a serious storm water back-up problem in the 6200 block of Woodbine Avenue at the railroad overpass, sufficiently suggest that the city was aware of a stormwater management problem in the vicinity of plaintiffs' property to allow the notice issue to go to the jury. (Exhibit EM-1 to Plaintiffs' Response to City of Philadelphia's Motion for Summary Judgment).

In addition, as Mr. Pirelli testified, the street and area underneath the Woodbine Avenue bridge when he arrived there at approximately 8:30 p.m. on July 14, 1994 was covered with some 6–8 inches of mud and stone or ballast. (Exhibit "E" to City's Motion for Summary Judgment). The report of Anthony DeFalco, the plaintiffs' expert engineering witness reflects that, if called to testify at trial, he would testify that during the storm of July 14, 1994, water from within and outside of the drainage area fed the "bowl" area of Woodbine Avenue with debris and solids from a much larger effective drainage area causing the inlets to clog like a sink. (Exhibit "F" to City of Philadelphia's Motion for Summary Judgment; Exhibit "A" to City of Philadelphia's Sur Reply to Plaintiff's Response to Motion for Summary Judgment). While inconclusive, this evidence is likewise sufficient to allow the question of whether the city's sewer/stormwater management system was in a defective condition at the time of the July 14, 1994 storm to be determined by the jury. For these reasons, we shall deny the City's motion for summary judgment.

## C. The Act of God Defense.

Both the City and Amtrak have argued that they are entitled to the entry of judgment in their favor as a matter of law because the July 14, 1994 storm was an Act of God for which they cannot be held liable.

It is well-established that the affirmative defense of *vis major* or force of nature (formerly "Act of God") is the concept of a natural force of such inevitability and irresistibleness that man cannot cope with it, either to predict, forestall it or control it when it arrives. *Engle v. West Penn Power Co.*, 409 Pa.Super. 462, 482, 598 A.2d 290, 300 (1991)citing *Goldberg v. R. Grier Miller & Sons, Inc.*, 408 Pa. 1, 8, 182 A.2d 759, 763 (1962). It is also defined as "an unusual, extraordinary, sudden and unexpected manifestation of the forces of nature which cannot be prevented by human care, skill or foresight." *Id. See Also: Martin v. Philadelphia*, 54 Pa.Super. 563, 567 (1913). In determining whether a flood is or is not extraordinary there must be taken into account the character of the particular stream, the adjacent territory and the history of previous floods. *Carlson v. A & P Corrugated Box Corporation*, 364 Pa. 216, 219, 72 A.2d 290, 292 (1950). Ultimately, however, whether the intervening cause of an injury is wind, snow, storm, or sea, the test remains whether the defendant did all that a reasonable person could have been expected to do to avoid the happening which is the cause of the plaintiff's injuries. If he did, he is not liable in damages; if he did not, then he is liable. *Bowman v. Columbia Telephone Company*, 406 Pa. 455, 464, 179 A.2d 197, 202 (1962).

In application of the foregoing principles, we are confronted with conflicting experts' reports from each of the parties. Not surprisingly, the defendants' meteorological expert reports opine that the July 14, 1994 storm was an extraordinary event and one which was in excess of the 100–year storm for the Philadelphia region. (Exhibits "D," "E" and "F" to Amtrak's Motion for Summary Judgment; Exhibit "G" to City of Philadelphia's Motion for Summary Judgment). As expected, the plaintiffs' proposed expert gives a contrary opinion: the July 14, 1994 storm was far more severe in Camden County, New Jersey than in West Philadelphia and was in fact a 25–year storm. (Exhibit "A" to Plaintiffs' Response to Amtrak's Motion for Summary Judgment). Given these contradictory opinions, we shall leave the question of whether the storm in question constituted such a force of nature and/or act of God as to absolve defendants of liability to the jury.